In the Matter of MEYER SHAPIRO, Petitioner, *v.* BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.

Third Department, December 29, 1964.

*Harris B. Steinberg* and *Stanley S. Arkin* for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Robert W. Bush* of counsel), for respondent.

HERLIHY, J. The petitioner was engaged in the practice of his profession in the City of New York when an investigation was instituted, pursuant to a complaint of a fellow doctor, which resulted in his being found guilty of charges contained in two specifications.

The sole issue, on this appeal, is whether there is substantial evidence to sustain either or both charges.

The first specification charged the petitioner with violation of paragraph (a) of subdivision 2 of section 6514 of the Education Law in that on or about and between September 8, 1960 and July 7, 1961 he filed " required reports " with the Workmen's Compensation Board concerning treatments rendered to one Thomas Pryor, which reports were false and fraudulent.

The answer of the petitioner admitted the filing of the reports but denied that they contained anything false or fraudulent.

The board found that the petitioner did not give a satisfactory " explanation for the exaggerated bill for Pryor and find that respondent [petitioner] is responsible for its submission ". The " bill ", referred to therein, was a statement for the services rendered to Pryor, sent by the petitioner to an insurance company in connection with a compensation claim. However, it was not part of the two reports alleged to be false and fraudulent in the specification, which admittedly were in proper order.

It is apparent from reading the present record that the bookkeeping practice of the petitioner is subject to criticism, and accounts, at least in part, for the mistake allegedly made,

as there were a number of patients named Pryor and additionally the petitioner treated Thomas Pryor for illnesses other than the compensable injury. The petitioner did not supervise the preparation of the statement and any error was made by his clerk, whose whereabouts, at the time of the hearing, were unknown. It seems obvious that the admitted error was readily discernible from an examination of the "required reports" and thus, apparently, came to the attention of the insurance company. The reports, the basis for the charge, admittedly were not false or fraudulent and the isolated instance, in this record, of an inaccurate statement for services sent to an insurance company, not the Workmen's Compensation Board, if within the framework of the charge, does not sustain a finding of fraud or deceit.

In our opinion, from a reading of the record, there is no fair argument to sustain the finding of substantial evidence as to specification "1" that the "respondent [is] guilty of fraud or deceit in the practice of medicine".

The second specification charged the petitioner with violation of paragraph (e) of subdivision 2 of section 6514 of the Education Law in that on or about and between November 28 and 30, 1961 and on or about January 9, 1962 the petitioner offered to give two patients a series of four injections, and in one instance certain pills for the purpose of terminating a pregnancy.

The petitioner, in his answer, admits that he offered to give a series of four injections and certain pills as to one of the patients but denied knowledge or information as to the other and further denied that the said treatment was for the purpose of terminating pregnancy.

One witness stated that the petitioner informed him that he did not perform abortions. The strongest case made against the petitioner is the statement, denied by him, that the injections and pills "would terminate a weak pregnancy". The recommended treatment was not given to any of the witnesses.

The petitioner testified, without contradiction, that the suggested injections would not induce an abortion and that he would not give such treatment absent the "rabbit test". There is ample evidence in this record to show that the petitioner misrepresented to his patients what the treatments would accomplish.

Paragraph (e) of subdivision 2 of section 6514 provides that disciplinary measures are in order if it is found "(e) That a physician, osteopath or physiotherapist did *undertake* or *engage* in any manner or by any ways or means whatsoever to

perform any criminal abortion or to *procure* the performance of the same by another or to violate section eleven hundred forty-two of the penal law, or did *give information* as to where or by whom such a criminal abortion might be performed or procured." (Emphasis added.)

There is no evidence to demonstrate that the petitioner violated any of the specifics of this section. However, the above-quoted statute incorporates, by reference, section 1142 of the Penal Law, the pertinent part thereof, as follows: " A person who sells, lends * * * any instrument or article, or any recipe, drug or medicine * * * for causing unlawful abortion * * * or advertises, or holds out representations that it can be so used or applied * * * [is guilty of a misdemeanor]. " (Emphasis added.)

With reference to the second specification, the board stated: " [W]e find that respondent did represent to these women that the series of injections he would give them would end a 'weak pregnancy'. We know and respondent knew that if these women were pregnant the injections would have no effect. However, the offering or holding out that these injections would end a pregnancy is not only specifically proscribed by the Education Law and the Penal Law but such conduct is reprehensible by a holder of a medical license as a deception on the public." (Emphasis added.)

We determine that the board's finding that the petitioner " offering to perform an abortion " is not fairly sustained in this record. However, there is substantial evidence as to specification " 2 " of " representations " by the petitioner in violation of section 1142 of the Penal Law. (See *People* v. *Hager,* 181 App. Div. 153, 155; *Matter of Neshamkin* v. *Board of Regents,* 255 App. Div. 897, affd. 281 N. Y. 683.)

While it is true that the nature of the proof did not exactly conform to the specification charge of offering to perform abortions, petitioner has not demonstrated how he has been prejudiced in any way by the board accepting the proof that there was a violation of section 1142. This is not the type of case where the findings departed so completely from the charges as to deprive the petitioner of his right to adequately prepare his defense (e.g., *Matter of Weiner* v. *Board of Regents,* 3 A D 2d 113, 119).

There appears to be no necessity for remittal as to the finding of guilt and three months' suspension on the second charge as we determine that such suspensioin for violation of section 1142 of the Penal Law is not excessive.

The determination as to specification "1" of the charges should be annulled and specification "2" of the charges should be affirmed.

GIBSON, P. J. (concurring in part and dissenting in part). The supposedly padded bill was not one of the "required reports" contemplated by the specification or by the Workmen's Compensation Law; nor was it "filed * * * with the Workmen's Compensation Board", as charged, nor was it required to be so filed. Although the New York County Medical Society, upon its investigation, had apparently accepted the explanation that petitioner's "office manager had mixed the charts of two patients by the same name", the respondent board was not bound to accept that explanation and did not do so; but the obvious fact remains that the bill was not within the specifications charged.

With respect to the second specification, the respondent board was warranted in accepting the testimony of the investigator Davis that petitioner had offered to give her injections which would terminate "a weak pregnancy"; and the fact that petitioner knew that they would do no such thing should scarcely exculpate him; and at the very least he was guilty of misrepresentation of the efficacy of the suggested treatment, or "deception" as the board put it, within the proscription of the statute (Education Law, § 6514, subd. 2, par. [e]; Penal Law, § 1142) and within the purport and intent of the charge. In my view the charge involving the witness Smith was not sustained, the uncontradicted testimony being that, before prescribing or otherwise acting, petitioner wished to make an examination or test which the witness declined to undergo.

REYNOLDS and AULISI, JJ., concur with HERLIHY, J.; GIBSON, P. J., concurs in part and dissents in part, in a memorandum, in which HAMM, J., concurs.

Determination modified by annulling the finding as to specification "1", and, as so modified, confirmed, without costs.